UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-1240 JGB (SHKx)** | Date | September 14, 2023 |
|---|---|---|---|
| Title | *Liva Siaosi, et al. v. TA Operating LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion to Remand (Dkt. No. 13); (2) GRANTING Plaintiffs' and Defendant's Requests for Judicial Notice; and (3) VACATING the September 18, 2023 Hearing (IN CHAMBERS)

Before the Court is a motion to remand filed by plaintiffs Liva Siaosi ("Siaosi"); Perry Vazquez ("Vazquez"); Willie Calvin Bryant ("Bryant"); and Imran Ayub ("Ayub,") (collectively, "Plaintiffs"). ("Motion," Dkt. No. 13.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court (1) **GRANTS** the Motion; and (2) **GRANTS** Plaintiffs' and Defendant's requests for judicial notice. The Court **VACATES** the hearing set for September 18, 2023.

## I. BACKGROUND

On February 22, 2023, Plaintiffs, individually and on behalf of similarly situated individuals, filed a putative class action complaint in the San Bernardino County Superior Court against defendants TA Operating LLC ("TA" or "Defendant"), and Does 1 through 100 (collectively, "Defendants"). ("Complaint," Dkt. No. 1-1, Ex. A.) On June 26, 2023, Defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"). ("Notice of Removal" or "NOR," Dkt. No. 1.) In support of its NOR, Defendant filed the declaration of Karen Kaminski ("Kaminski"). ("Kaminski Declaration," Dkt. No. 1-2.)

The Complaint alleges ten causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) wage statement violations; (7) failure to timely

pay wages during employment; (8) violations of Labor Code § 2802; (9) violations of Labor Code section 227.3; and (10) unfair competition. (See Complaint.)

Plaintiffs filed the Motion on July 26, 2023. (Motion.) In support, Plaintiffs filed: (1) the declaration of Bryan Miller, Plaintiff's attorney ("Miller Declaration," Dkt. No. 13-1); (2) evidentiary objections to evidence submitted in support of Defendant's NOR ("Pls.' Evidentiary Objections," Dkt. No. 13-2); and (3) request for judicial notice of a court filing ("PRJN," Dkt. No. 13-3).

On August 7, 2023, Defendant opposed the Motion. ("Opposition," Dkt. No. 14.) In support, Defendant filed: (1) request for judicial notice ("DRJN," Dkt. No. 14-1); (2) responses to Pls.' Evidentiary Objections ("Response to Pls.' Objections," Dkt. No. 14-2); and (3) supplemental declaration of Kaminski ("Kaminski Supp. Declaration," Dkt. No. 14-3)[1]. Plaintiffs replied on August 28, 2023. ("Reply," Dkt. No. 17.)

## II.   FACTS

### A.  Request for Judicial Notice

In support of the Motion, Plaintiffs request judicial notice of the notice of removal of action to this Court, filed on or about September 14, 2022, in the action entitled Phillip Daniels, et al. v. TA Operating LLC, Case No. 5:22-cv-1634-JGB-SHK (Dkt. No. 13-3, Ex. A). (PRJN at 3.)

In support of the Opposition, Defendant requests judicial notice of the corresponding order in Daniels (Dkt. No. 14-1, Ex. 1) in which this Court granted Plaintiff's motion to remand. (DRJN at 2.) Neither request for judicial notice is opposed.

The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case. See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("court orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007). Accordingly, the Court GRANTS the PRJN and the DRJN.

---

[1] The Court will refer to the Kaminski Declaration and the Kaminski Supp. Declaration as "Kaminski Declarations" when discussed together.

B. Factual Allegations[2]

Siaosi is a non-exempt employee of Defendant and has worked for Defendant since approximately April 2017. (Compl. ¶ 2.) Vazquez is a non-exempt employee of Defendant and has worked for Defendant since November 2015. (Id. ¶ 3.) Bryant is a former non-exempt employee of Defendant and worked from approximately September 1994 through May 2022. (Id. ¶ 4.) Ayub is a former non-exempt employee of Defendant and worked from approximately April 2017 through July 2022. (Id. ¶ 5.) Plaintiffs bring their action on behalf of themselves and all other current and former non-exempt California employees employed by or formerly employed by Defendant. (Id. ¶ 1.) The proposed class is defined as follows:

> All current and former non-exempt employees of Defendants [sic] within the State of California at any time commencing four (4) years preceding the filing of their complaint up until the time that notice of the class action is provided to the class.

(Id. ¶ 23.)

The Complaint alleges that the Defendant has, at times, failed to pay overtime and minimum wages to Plaintiffs and the class members, or some of them, for all hours worked at the correct rate of pay. (Id. ¶¶ 13-14.) Defendant, allegedly, has, at times, failed to provide Plaintiffs and the class members, or some of them, meal and rest periods and payment of compensation for such unprovided meal and rest periods. (Id. ¶¶ 15-16.) Plaintiffs also allege that Defendants have, at times, failed to pay Plaintiffs and the class members, or some of them, the full amount of their wages owed to them upon termination and/or resignation. (Id. ¶ 17.) In addition, Plaintiffs allege that Defendant has, at times, failed to furnish Plaintiffs and class members, or some of them, with itemized wage statements and the full amount of their wages for labor performed in a timely fashion. (Id. ¶¶ 18-19.) Finally, Plaintiffs allege that Defendant has, at times, failed to indemnify class members, or some of them, for the costs incurred in using cellular phones for work-related purposes necessary to perform work duties. (Id. ¶ 20.)

### III. LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's

---

[2] Although the Complaint refers to "Defendants", only TA Operating LLC has been served and has appeared. TA Operating LLC removed the action. In addition, only TA Operation LLC opposed the Motion. Accordingly, the Court will refer to a single Defendant.

view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence").

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal

quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

## IV. DISCUSSION

### A. Daniels and Peters

This action involves nearly identical allegations as those raised in Phillip Daniels et al. v. TA Operating LLC et al., Case No. 5:22-cv-1634-JGB-SHK (C.D. Cal. 2023) and Jolene Peters v. TA Operating LLC, et al., Case No. 5:22-cv-1831-JGB-SHK (C.D. Cal. 2023).[3] In all three actions, TA employees (one in Peters, two in Daniels, four here) filed a putative class action asserting parallel wage and hour claims in state court; Defendant (represented by the same counsel) removed the action pursuant to CAFA; and plaintiffs moved to remand. In Daniels, this Court granted a motion to remand, finding that TA failed to meet its burden to demonstrate the $5,000,000 jurisdictional threshold under CAFA. (See Daniels Order.) In Peters, this Court again granted a motion to remand under CAFA for largely the same reasons. (See Peters Order.) Notably, in all three cases, Defendant's counsel provided almost identical underlying assumptions and evidence of the amount in controversy ("AIC") for each of Plaintiffs' claims. (See Opposition; see also Daniels Order; Peters Order.) Defendant's estimates of the AIC across the three matters differ only slightly. In all three cases, Defendant relies entirely on the declaration of Karen Kaminski, the Senior Vice President of Human Resources at TA Operating ("Kaminski") for evidence in substantiating their AIC. (See Kaminski Declarations; see also Daniels NOR; Peters NOR.)

Plaintiffs allege that Defendant's NOR is "virtually identical" to the Daniels NOR and to the Peters NOR. (Motion at 1-2.) Defendant's attempt to distinguish this case from Daniels and Peters is based solely on Kaminski's Declarations, which now "[attest] to additional information upon which Defendant reasonably bases its amount in controversy calculations in the NOR." (Opposition at 7.) Apart from the two exceptions below, Kaminski's Declarations in this case are indistinguishable from those in Daniels and Peters:

1. I am aware that Plaintiffs' time records did not reflect a clock out for a full 30-minute uninterrupted meal period that was started before the end of the fifth hour of work in at lease five percent (5.0%) of the shifts they worked for TA Operating that lasted more than five hours between February 22, 2022 and August 31, 2022. (Kaminski Declaration ¶ 9.)
2. I am aware that the time records for TA Operating's full-time non-exempt employees in the state of California during the period between February 22, 2019 and August 31, 2022 did not reflect a clock out for a full 30-minute uninterrupted meal period that was started before the end of the fifth hour of work in at least five percent (5.0%) of

---

[3] For clarity, the following matters are defined: Daniels Notice of Removal ("Daniels NOR"); Daniels Order Granting Motion to Remand ("Daniels Order"); Peters Notice of Removal ("Peters NOR"); and Peters Order Granting Motion to Remand ("Peters Order").

the shifts that were worked for TA Operating during this period that lasted more than five hours. (Kaminski Supp. Declaration ¶ 4.)

The Court disagrees with Defendant and finds that its evidence is insufficient to satisfy the burden required to assert the AIC required to remain in federal court. For reasons explained below, the Court's analysis of these arguments is largely the same as in Daniels and Peters, as is the result it reaches. Where the analysis differs, the Court so indicates.

### B. CAFA: Amount in Controversy

Plaintiffs move to remand on the ground that Defendant failed to prove by a preponderance of the evidence that the AIC for the class exceeds the $5,000,000 CAFA jurisdictional minimum. (See Motion at 11.) In its NOR, Defendant asserts that the AIC requirement under CAFA is satisfied because "a plausible reading" of Plaintiff's claims leads to an aggregate AIC exceeding $6,424,290, excluding attorneys' fees. (NOR ¶ 26.) Defendant estimates that attorneys' fees may be 25% of the potential damages, or $1,606,072. (Id. ¶ 29.)

#### 1. Evidentiary Support

Here, because the Complaint does not state the amount of damages sought, TA must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

In calculating the AIC, TA relies entirely on the Kaminski Declarations. (See NOR.) Kaminski declares that she has "access to" and "reviewed payroll records for individuals who are or were employed by TA Operating as non-exempt employees in the state of California between February 22, 2019 and August 31, 2022, which were created, maintained, and kept by TA Operating in the regular and ordinary course of business." (Kaminski Declaration ¶ 4.) From this review, Kaminski estimates that TA employed at least 5,000 non-exempt employees in the state of California who received biweekly wage statements between February 22, 2019 and

August 31, 2022, of which at least 1,109 have separated from their employment with TA Operating since February 22, 2020. (Id. ¶¶ 5-6.) Kaminski declares that "the non-exempt employees who were employed by TA Operating in the state of California collectively worked over 139,996 workweeks between February 22, 2019 and August 31, 2022." (Id. ¶ 7.) Kaminski further states "TA Operating employed at least 1,331 full-time non-exempt employees in the state of California who received biweekly wage statements between February 22, 2022 and August 31, 2022, and that these employees collectively received over 13,461 wage statements between February 22, 2022 and August 31, 2022." (Id. ¶ 8.)

Plaintiffs object to the Kaminski Declaration regarding her estimates about the number of non-exempt employees that TA employed, the number of workweeks the employees worked, how many employees have separated from their employment with TA since February 22, 2020, the percentage of shifts employees worked that lasted more than five hours, and the amount of wage statements that employees received. (See Pls.' Evidentiary Objections.) Plaintiffs argue that Kaminski's estimates are hearsay, improper legal conclusions, speculative expert testimony, fail to authenticate, and violate the best evidence rule because TA did not submit any records to support Kaminski's declaration. (Reply at 11-12; see Pls.' Evidentiary Objections.) The Court disagrees. Kaminski states that she is the Senior Vice President of Human Resources at TA, she oversees TA's payroll department, and she has "access to and regularly review[s] payroll data and records" of TA's current and former employees that are "created, maintained, regularly updated and kept by TA in the regular and ordinary course of business." (Kaminski Decl. ¶ 2.) That is sufficient to establish foundation. See Torrez, 2017 WL 2713400, at *3 (finding that declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities).

Plaintiffs' hearsay, failure to authenticate, best evidence rule, improper legal conclusions, and speculative expert testimony objections are similarly unpersuasive. The Kaminski Declaration does not reveal any "statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted." Deleon v. Time Warner Cable LLC, 2010 WL 11515279, at *2 (C.D. Cal. Apr. 12, 2010) (internal citations omitted). The Kaminski Declaration relies on Kaminski's personal knowledge learned from her position and her review of payroll records. "To the extent that those [payroll] records contain hearsay statements, [TA] [has] established that the business records are 'records of regularly conducted activity,' which 'are not excluded by the hearsay rule.'" Id. (quoting FRE 803(6).) Furthermore, Kaminski does not testify to the authenticity of an item of evidence but to her personal knowledge. As to Plaintiffs' best evidence rule objection, courts have overruled such an objection because payroll contents may be proven without producing written receipts or books of account. See Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *2 (C.D. Cal. Oct. 6, 2022) (overruling best evidence rule objection because payroll contents may be proven without producing written receipts or books of account); Jones v. Tween Brands, Inc., 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding that defendant was not required to provide the payroll data upon which its declarant relied upon). As to Plaintiffs' improper legal conclusion, FRE 704 states "[a]n opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a). "The

basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." FRE 704, Notes of Advisory Committee on Proposed Rules. The Court finds that Kaminski's declaration does not contain improper legal conclusions. Plaintiffs also object to Kaminski's declaration on the grounds that it constitutes speculative expert testimony. Under Rule 702, the expert "must establish the reliability of the principles and methods employed 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.'" U.S. v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002) (explaining that the expert failed to explain in any detail the knowledge, investigatory facts and evidence he was drawing from) (citing Kumho Tire Company, LTD., et al., v. Patrick Carmichael, etc., et al., 526 U.S. 137 (1999) (italics omitted). Here, Kaminski declares her role and access at TA, as well as the records which she reviewed for the purposes of the declaration. (See Kaminski Decl. ¶¶ 2-4.) Accordingly, the Court may consider the Kaminski Declaration. Plaintiffs' evidentiary objections are **OVERRULED**.

## 2. Meal and Rest Periods (Claims Three and Four)

TA asserts that Plaintiffs' meal period and rest break violations each place $492,330 in controversy, respectively. (NOR ¶¶ 26 a-b.) To reach this figure, TA assumes a 5% potential non-compliance rate, which is solely based on the Kaminski Declarations.[4] (NOR ¶ 26 a.)

TA explains that its assumptions are conservative and reasonable because the "Complaint seeks payment in connection with all forms of break-related violations (missed, delayed, interrupted or incomplete)." (Opposition at 17.) TA attempts to differentiate this case from Daniels because, according to Kaminski, here the "5% potential non-compliance rate was not simply 'pulled from thin air' but has a factual basis which allowed the court to make a reasonable assumption as to the applicable potential violation rates." (Id. at 17.) TA asserts that its reliance on the two new statements in the Kaminski Declarations distinguishes this case from Daniels and Peters, and establishes that this case should be decided differently. Plaintiffs counter that Kaminski's declaration of a 5% non-compliance rate is insufficient to meet the preponderance of the evidence standard required here because TA "does not produce anything that might actually suggest an appropriate assumed violation rate for the putative class here as a whole." (Reply at 3.) Plaintiffs argue that TA's proffered proof here is no more probative than their assumed violation rates in Daniels. (Id.; see Daniels Order.) Further, Plaintiffs highlight that TA fails to cite any legal authority in support of its arguments that Plaintiffs' allegations in the Complaint somehow make it reasonable to assume that "each and every putative class member experienced violations at exactly the same rate." (Id.)

The Court agrees with Plaintiffs. TA's assumptions "lack factual support." Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018). Plaintiffs allege in the Complaint that "Defendants have, at times, failed to provide Plaintiffs and

---

[4] TA contends that Plaintiffs have placed "in excess of $492,330 in controversy in connection with their meal period claim ($15.63 average hourly rate x 629,982 workdays x 5% potential non-compliance rate)." (NOR ¶ 26 a.)

Class Members, <u>or some of them</u>, full, timely thirty (30) minute uninterrupted meal period for days on which they worked more than five (5) hours . . . ." (Compl. ¶¶ 15, 50 (emphasis added).) Plaintiffs also allege that "Plaintiffs and Class Members were, <u>at times</u>, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof." (<u>Id.</u> at ¶ 58.) From these vague allegations, TA assumes that each putative class member was denied a meal and rest period at a rate of 5%. (Opposition at 16.) "It would be just as consistent with the [C]omplaint to assume a frequency of . . . once-per-quarter" violation based on the Complaint's allegations of "sporadic and intermitted practices." <u>Duran v. Allegis Glob. Sols., Inc.</u>, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021).

As in <u>Daniels</u>, TA's only evidence is Kaminski's declarations which provide an estimate of the total numbers of employees that TA employed, states that employees received biweekly wage statements, estimates the number of workweeks that employees worked in total, estimates the number of employees that have separated from their employment with TA, and estimates the percentage of shifts in which Plaintiffs' time records did not reflect a clock out for a full 30-minute meal period. (Kaminski Decl. ¶¶ 5-9.) Despite Kaminski's one sentence addition in this case regarding the percentage of potential non-compliant shifts worked, the Declarations still fail to provide sufficient evidence "that would assist the Court in making a reasonable assumption as to the applicable violation rate." <u>Gonzalez v. H&M Hennes & Mauritz L.P.</u>, 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022). Thus, TA does "not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the [C]omplaint that might do so." <u>Duran</u>, 2021 WL 3281073, at *3. TA relies on Kaminski's Declarations, which the Court has deemed insufficient to meet the burden of proof, and points to other cases where courts have accepted a 5% non-compliance rate for meal and rest periods, but it does not sufficiently explain or provide evidence of why its assumption of a 5% rate makes sense here. (<u>See</u> Opposition at 17.)

Accordingly, because TA does not sufficiently "set forth any facts supporting its assumptions regarding the frequency of meal and rest period violations . . . the Court finds that [TA] has failed to establish by the preponderance of the evidence the amount in controversy for these claims." <u>Salazar</u>, 2018 WL 4560683, at *3 (finding that defendant presented no facts supporting its violation rate and thus defendant did not establish by a preponderance of the evidence the AIC for plaintiffs' meal and rest break claims); <u>see also</u> <u>Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming district court's decision that defendant's evidence was insufficient to support removal jurisdiction because defendant failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one missed rest period per paycheck or month).

//
//
//
    **3. Failure to Pay Timely Final Wages (Claim Five)**

TA's calculations and arguments regarding failure to pay wages due at termination are nearly identical to those in Daniels and Peters. (See Daniels NOR; Daniels Order; Peters NOR; Peters Order.) In all three cases, TA assumes a 100% violation rate. (Id.; see NOR.) The only difference is that here, TA relies on the 5% potential non-compliance rate for meal periods from Kaminski's Declarations. (NOR at 18-19.) In Daniels and Peters, the Court found that TA failed to show sufficient evidence to establish the alleged AIC for failure to pay timely wages. Because TA's only additional proffered evidence is Kaminski's meal period estimations, which the Court holds is insufficient evidence, the Court is unpersuaded that TA has met the required evidentiary threshold to support $4,160,080 in controversy for Plaintiffs' failure to pay timely final wages claim.

Here, TA asserts that Plaintiffs' failure to pay timely final wages claim puts at least $4,160,080 in controversy. (Opposition at 18.) Based on the allegations in the Complaint, and the fact that TA estimates that "at least 1,109 full-time Putative Class Members" have separated from the employment with TA, TA assumes a 100% violation rate. (NOR ¶ 26 d.) TA explains that its assumption is reasonable because the Complaint alleges that TA "intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202." (Opposition at 19; Compl. ¶ 66.) TA cites a decision by this District where the Court found that it was reasonable for the defendants to assume a 100% violation rate in estimating the waiting time penalties. (Opposition at 19-20 (citing Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *3 (C.D. Cal. Oct. 6, 2022).)

However, Thompson is distinguishable. There, the Court held that "Defendants have shown by a preponderance that their [meal period] estimate is reasonable." Thompson, 2022 WL 5241838, at *3. The court relied on this finding in accepting defendants' argument that the "missing meal period [was] the underlying violation," and therefore a sufficient basis to assume a 100% violation rate for the failure to pay upon termination claim. Id. Here, the Court finds that TA's assumptions about Plaintiffs' meal and rest break non-compliance are unreasonable. Therefore, TA has not established that it is reasonable to assume that 100% of all terminated employees would have wages withheld after their employment ended.

Notably, neither party has submitted evidence to tip the analysis in either direction, and "[u]nder the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Ibarra, 775 F.3d at 1199. Accordingly, without more, the Court finds that TA has not shown by a preponderance of the evidence that there is at least $4,160,080 in controversy for Plaintiffs' failure to pay timely final wages claim.

//
//
//
//

4. **Failure to Provide Accurate Wage Statements (Claim Six) and Attorneys' Fees**

      The Court need not decide the AIC for Plaintiffs' remaining claim at issue, wage statements, or the amount of attorneys' fees at stake because even if the Court found that TA met its burden to show by a preponderance of the evidence that its calculations for the remaining claims and attorneys' fees are reasonable, the AIC would total less than $5,000,000, which does not meet CAFA's jurisdictional threshold.  As established above, TA's estimated meal period, rest period, and failure to provide timely final wages calculations are unreasonable.  As to the remaining claim at issue, TA asserts that Plaintiffs' failure to provide accurate wage statements claim puts at least $1,279,550 in controversy.  (NOR ¶ 26 e.)  TA estimates that Plaintiffs' will recover a 25% fee of $1,329,245.  (NOR ¶ 29.)  Thus, the total estimate for the remaining claims and attorneys' fees is $2,608,795, well below the jurisdictional threshold.  Furthermore, the attorneys' fees estimate would likely be lower since TA calculated the fees by considering its estimates for Plaintiffs' meal and rest period claims, which the Court found to be based on unreasonable assumptions.  Accordingly, the Court finds the AIC for Plaintiffs' claims is below the threshold amount necessary for federal diversity jurisdiction.

## V.    CONCLUSION

      For the reasons above, the Court **GRANTS** the Motion. The September 18, 2023 hearing is **VACATED**.  The case is **REMANDED** to the Superior Court of California for the County of San Bernardino.

      The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**